UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER, <br><br>Plaintiffs,<br><br>v.<br><br>RPM MORTGAGE, INC.,<br><br>Defendant. | Case No. 15-cv-05534-EMC <br><br>**ORDER DENYING RPM MORTGAGE, INC.'S MOTION FOR DEFAULT JUDGMENT** <br><br>Docket No. 81 |

Third Party Plaintiff RPM MORTGAGE, INC. dba RESIDENTIAL PACIFIC MORTGAGE ("RPM") filed suit against Third Party Defendant Jaclyn Coffin ("Ms. Coffin"), seeking to recover damages for equitable indemnity and contribution. On October 26, 2016, RPM served the summons and complaint upon Ms. Coffin. *See* Docket No. 52. When Ms. Coffin failed to plead or otherwise defend or appear in this action, RPM requested entry of default against Ms. Coffin on December 13, 2016. Docket No. 5. On December 15, 2016, the clerk entered default against Ms. Coffin. Docket No. 60. Pending before the Court is RPM's Motion for Default Judgment. Docket No. 81 ("Mot."). For the reasons set forth at the hearing and memorialized below, the Court **DENIES** the motion for default judgment. RPM may file and serve an amended complaint.

## I. FACTUAL & PROCEDURAL BACKGROUND

This case was initiated by Plaintiff FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for AMTRUST BANK ("FDIC") against RPM for breach of contract. Docket No. 1 (the "Action") ¶¶ 1-2. The FDIC's claims arose from NL's sale of four loans to AmTrust Bank ("AmTrust") in 2007. *Id.* The FDIC alleged that NL breached a Purchase Agreement when it

provided incomplete or false information regarding those loans to AmTrust; the loans later defaulted. *Id.* ¶ 2; ¶¶ 12-47. The FDIC is AmTrust's receiver. *Id.* ¶ 2. NL has since dissolved. *See* Docket No. 41 ("Compl.") ¶ 8. RPM allegedly succeeded NL. The FDIC sued RPM as NL's successor-in-interest, though RPM denied being the successor. *Id.* ¶ 6. Ultimately, the FDIC accepted RPM's Rule 68 offer to compromise in the amount of $200,001 on November 21, 2016.

With respect to one of the loans (the "Coates Loan"), RPM filed a Third Party Complaint on October 7, 2016 against Jaclyn Coffin and Elizabeth Coates, asserting a claim for equitable indemnity and contribution. *See* Compl. ¶ 4. According to RPM, the FDIC had alleged in the underlying action that (1) Ms. Coates's employment and income details falsely claimed that she worked for Robert G. Coffin Masonry when she did not, and (2) Ms. Coates was a straw buyer who never intended to occupy the property, and that Ms. Coffin in fact occupied it. *Id.* ¶ 9. Other than the allegation that Ms. Coffin lived in the property, the only other allegation concerning her was that Ms. Coffin was the real estate agent on a short sale of the property for $200,000 after Ms. Coates defaulted on the loan, and that Ms. Coffin's real estate license was later suspended for unstated reasons. *Id* ¶ 10.

RPM and Ms. Coates ultimately settled on October 23, 2017 through the bankruptcy court for payment by Ms. Coates of $10,000 to RPM. *See* Mot. at 4. However, Ms. Coffin never responded to the summons or complaint filed by RPM. So default was entered against her on December 15, 2016. *See* Docket No. 60. Now, RPM moves for entry of default judgment against Ms. Coffin, seeking to recover $170,000 of its $200,000 settlement with the FDIC, in addition to attorney's fees amounting to $81,184.45, which it says is attributable to the Coates Loan. *See* Mot. at 4.

## II. LEGAL STANDARD

After entry of default, a court may grant a default judgment on the merits of the case. Fed. R. Civ. P. 55. The Court's "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980). Courts consider the following factors in determining whether to exercise this discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Upon entry of default, the factual allegations of the complaint regarding liability are deemed to have been admitted by the defaulting party. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). However, allegations regarding damages are not deemed admitted. *Id.* Moreover, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). If liability is found, the Court has "considerable leeway as to what it may require as a prerequisite to the entry of a default judgment" when determining damages. *TeleVideo*, 826 F.2d at 917.

## III. DISCUSSION

A. Adequacy of Service of Process

When evaluating whether to grant or deny a motion for default judgment, a court must "assess the adequacy of the service of process on the party against whom default is requested." *Board of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C00–0395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D.Cal. Dec. 29, 2000). Service on an individual may be effected by any method authorized under the law of the state in which the district court is located, in this case California. *See* Fed. R. Civ. P. 4(e)(1). Under California law, an individual may be served through substituted service "by leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address ... in the presence of a competent member of the household or a person apparently in charge of his or her office, place of business, or usual mailing address ... at least 18 years of age." *See* Cal. Code Civ. Proc. § 415.20. Before substituted service is permitted on individuals, there must be a showing that the summons and complaint could not, with reasonable diligence, be personally delivered. *See* id. § 415.20(b).

RPM tried to locate Ms. Coffin. *See* Docket No. 49. RPM attempted to personally serve Ms. Coffin four times on different days at different times of the day (on October 15, 2016 at 12:10

3

1  p.m., October 18, 2016 at 11:50 a.m., October 20, 2016 at 8:42 p.m., and October 23, 2016 at 1:33

2  p.m.) at what is allegedly her home address but no one answered the door. *See* Docket No. 52.

3  This suggests that Ms. Coffin could not have been served with reasonable diligence. *See e.g.*, *Joe*

4  *Hand Promotions, Inc. v. Mujadidi*, No. C–11–5570 EMC, 2012 WL 3537036, at *2 (N.D. Cal.

5  Aug. 14, 2012) (five attempts at personal delivery prior to substituted service was enough to find

6  that defendant could not have been served with reasonable diligence).

After these four failed attempts to personally serve Ms. Coffin at her home address, RPM left a copy of the summons and complaint with Lili Coffin, Ms. Coffin's mother, at the same address on October 26, 2016. *See* Docket No. 52. RPM then mailed the summons and complaint to that same address on October 28, 2016. *Id.* This constitutes adequate substituted service in accordance with § 415.20.

B. <u>Merits of Motion for Default Judgment</u>

Entry of default judgment is not warranted here. Though many *Eitel* factors weigh in favor of judgment (*e.g.*, prejudice to RPM, no indication of Ms. Coffin's excusable neglect, unlikelihood of resolution on the merits), two important factors do not. Namely, the complaint's allegations are insufficient to state a claim for indemnity or contribution against Ms. Coffin, so the claim as pled lacks merit.

With respect to RPM's contribution claim, a "right of contribution [in California] can come into existence only after rendition of a judgment declaring more than one defendant jointly liable to the plaintiff." *Coca-Cola Bottling Co. v. Lucky Stores, Inc.*, 11 Cal. App. 4th 1372, 1378 (1992) (citations omitted). There is no such judgment in favor of the FDIC against Ms. Coffin here. In fact, Ms. Coffin was not even a party in the FDIC v. RPM action. Thus, RPM failed to state a claim for contribution against Ms. Coffin. *See Hoffman v. May*, 313 Fed. Appx. 955, 958 (9th Cir. 2009) (finding that plaintiff failed to state a claim for equitable contribution against defendants because there was no judgment rendered against defendants).

As for RPM's indemnity claim, equitable indemnity in California encompasses both traditional equitable indemnity and implied contractual indemnity. *Prince v. Pacific Gas & Elec. Co.*, 45 Cal. 4th 1151, 1157-59 (2009). Both theories of recovery are only available when there is

a joint legal obligation between the indemnitee (RPM) and indemnitor (Ms. Coffin) to the injured party (the FDIC). *Id.* at 1160-61. RPM does not specify in its complaint or motion which theory it advances, but it seems to premise its claim on the FDIC's allegation that the Coates Loan was obtained fraudulently. *See* Compl. ¶ 2. Nevertheless, neither theory of recovery is adequately pled.

        1.      <u>Traditional Equitable Indemnity (Between Joint Tortfeasors)</u>

RPM fails to state a claim for traditional equitable indemnity. "It is well-settled in California that [traditional] equitable indemnity is only available *among tortfeasors* who are jointly and severally liable for the plaintiff's injury." *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp.*, 143 Cal. App. 4th 1036, 1040 (2006) (emphasis in original). "[T]here must be some basis for tort liability against the proposed indemnitor." *BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc.*, 119 Cal. App. 4th 848, 852 (2004) (internal citations omitted).

RPM does not allege that it was a joint tortfeasor with Ms. Coffin towards the FDIC (or AmTrust). Moreover, the FDIC sued RPM for breach of contract, not in tort. Traditional equitable indemnity is not available to apportion damages in a breach of contract claim. *See Stop Loss*, 143 Cal. App. 4th at 1054-55 (finding that traditional equitable indemnity is available only as between joint tortfeasors, and may not be obtained from a party whose liability is based solely on breach of contract); *see also Gonzales v. Nefab Packaging, Inc.*, 2013 WL 12321976, at *7 (C.D. Cal. Oct. 30, 2013) (where plaintiff sued defendants for statutory violations not tort, defendant's claim for equitable indemnity against co-defendant lacked legal foundation).

Even if a joint tortfeasor theory were viable, the complaint is devoid of well-pleaded factual allegations to substantiate that Ms. Coffin is a joint tortfeasor; RPM's complaint does not contain specific allegations that she defrauded the FDIC (or AmTrust). To state a claim for fraud, a plaintiff must allege "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974, 64 (1997) (internal quotation marks omitted).

The complaint only alleges that *the FDIC alleged* that (1) Ms. Coates misrepresented her

5

United States District Court
For the Northern District of California

employment and income, (2) Ms. Coates was a straw buyer, and (3) Ms. Coffin was the real buyer who occupied the property. *See* Compl. ¶ 9. These allegations do not allege that *Ms. Coffin* defrauded the FDIC (or AmTrust). At best, they would suggest that Ms. Coffin defrauded NL (RPM's alleged predecessor). As noted above, traditional equitable indemnity requires joint tort liability between the indemnitor and indemnitee (RPM and Ms. Coffin) towards the injured party (the FDIC/AmTrust), a fact not alleged here.

Second, there is a hearsay problem. Deeming the allegations admitted only establishes the truth of the assertion that the FDIC *made certain allegations*; it does not establish *the truth* of the FDIC's allegations.

Even if that were not the case, the allegations do not satisfy Rule 9(b). "[F]raud claims must be accompanied by the 'who, what, when, where, and how' of the fraudulent conduct charged." *F.T.C. v. Lights of Am., Inc.*, 760 F. Supp. 2d 848, 851 (C.D. Cal. 2010) (quoting *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Here, apart from the fact that the complaint does not specifically allege how *Ms. Coates* misrepresented her income and whether any inaccuracy about her income was material to NL's decision to approve the loan application, the complaint does not allege facts that would establish *Ms. Coffin's* liability for Ms. Coates's misrepresentations; it does not allege she was aware or involved in the fraud. The allegations are therefore insufficient to show that Ms. Coffin engaged in the fraudulent conduct underlying RPM's traditional equitable indemnity claim.

Thus, the allegations in the complaint do not sufficiently establish that Ms. Coffin defrauded the FDIC or that she was a joint tortfeasor with RPM.[1] RPM's attempt to now bring in facts in its motion or at the hearing is insufficient, because "necessary facts not contained *in the pleadings*, and claims which are legally insufficient, are not established by default." *Cripps*, 980 F.2d at 1267 (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978) (emphasis added).

---

[1] Because RPM was not sued for fraud, it is unclear why it seeks indemnity as a joint tortfeasor with Ms. Coffin. As alleged in RPM's motion, the facts might support a direct claim for fraud against Ms. Coffin on the theory that by defrauding NL, she caused reasonably foreseeable harm to RPM, but no such claim is asserted.

6

### 2. Implied Contractual Indemnity

RPM also fails to state a claim for implied contractual indemnity. Recovery for implied contractual indemnity is available when two parties to a contract are both responsible for injuring a third party. *See Prince*, 45 Cal. 4th at 1159. In contrast to traditional equitable indemnity, "[t]he right to implied contractual indemnity is predicated [on] the indemnitor's breach of contract." *See Sehulster Tunnels/Pre–Con v. Traylor Brothers, Inc./Obayashi Corp.*, 111 Cal. App. 4th 1328, 1350 (2003). RPM's complaint does not allege a contract between RPM (or NL) and Ms. Coffin, let alone that Ms. Coffin breached it. Nor was Ms. Coffin allegedly a party to NL's Agreement with the FDIC. Again, RPM's attempt to bring in facts not alleged in the complaint cannot provide a basis for default judgment. RPM therefore fails to state a claim for implied contractual indemnity against Ms. Coffin.

Because no valid claim on the merits has been alleged, the second and third *Eitel* factors regarding the sufficiency of the complaint and the merits of the suit weigh strongly against granting default judgment. This also means that the fifth *Eitel* factor concerning the possibility of disputed material facts weighs against granting default judgment. Facts necessary to establish fraud, such as "knowledge of falsity" or "scienter," *Engalla*, 15 Cal.4th at 974, are inherently more likely to involve material disputes. Because the necessary facts to establish fraud were not alleged in the complaint, they have not been admitted true by entry of default.

In light of the insufficiency of the complaint and the likelihood of material disputes, the Court **DENIES** the motion for default judgment.

### C. Procedure to Correct Complaint Deficiencies

Because the complaint fails to state a claim for equitable indemnity or contribution, default judgment may not be granted. At the hearing and in its moving papers, RPM alleged a variety of new facts (not pled in the complaint) which arguably could support a claim for fraud or indemnity. However, RPM cannot cure factual deficiencies in the complaint by alleging or even attempting to prove additional facts in its motion for default judgment or at oral argument. *Cf. Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir. 1988) (finding that plaintiff's failure to allege a valid claim against the defendant in a complaint is not cured by evidence presented at a

"prove-up" hearing on motion for default judgment because consideration of new evidence would not have permitted the defendant to conduct discovery). Thus, RPM should cure the deficiencies by filing and serving an amended complaint.[2] If no timely response is filed by Ms. Coffin, RPM may again seek entry of default and then move for entry of default judgment.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** RPM's motion for default judgment. RPM may file an amended third party complaint alleging, with specificity, the facts necessary to state a claim against Ms. Coffin within 30 days.

This order disposes of Docket No. 81.

**IT IS SO ORDERED**.

Dated: March 15, 2018

_____
EDWARD M. CHEN
United States District Judge

---

[2] Although the Court is not reaching the issue of damages, the Court notes that the reasoning behind RPM's estimate of its damages is neither clear nor persuasive. If RPM decides to file an amended complaint against Ms. Coffin, RPM should consider alleging and explaining the facts supporting a reasonable allocation of the portion of the settlement amount it paid to the FDIC that is attributable to the Coates Loan and to Ms. Coffin's conduct.

8