UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER,<br><br>Plaintiffs,<br><br>v.<br><br>RPM MORTGAGE, INC.,<br><br>Defendant. | Case No. 15-cv-05534-EMC<br><br>**ORDER GRANTING THIRD PARTY PLAINTIFF'S SECOND MOTION FOR DEFAULT JUDGMENT**<br><br>Docket No. 98 |

Third Party Plaintiff RPM Mortgage, Inc., now by merger named LendUS, LLC ("LendUS") filed suit against Third Party Defendant Jaclyn Coffin ("Ms. Coffin"), seeking to recover damages for equitable indemnity and contribution. LendUS served the summons and complaint upon Ms. Coffin on October 26, 2016. *See* Docket No. 52. When Ms. Coffin failed to plead or otherwise defend or appear in this action, LendUS requested entry of default against Ms. Coffin. Docket No. 60. On December 15, 2016, the clerk entered default against Ms. Coffin. Docket No. 61. LendUS filed its first motion for entry of default judgment by the Court on January 25, 2018. Docket No. 81. On March 15, 2018, the Court denied LendUS's motion with leave to amend. Docket No. 85. LendUS subsequently filed a First Amended Third-Party Complaint. Docket No. 88. LendUS again requested entry of default against Ms. Coffin on June 20, 2018. Docket No. 95. The clerk entered default against Ms. Coffin. Docket No. 96. Currently pending before the Court is LendUS's Second Motion for Default Judgment. Docket No. 98 ("Mot.").

For the reasons discussed below, the Court **GRANTS** LendUS's motion.

### I. FACTUAL & PROCEDURAL BACKGROUND

This case was initiated by Plaintiff Federal Deposit Insurance Corporation ("FDIC") as

Receiver for AmTrust Bank ("AmTrust") against LendUS for breach of contract. Docket No. 1 (the "Action") ¶¶ 1-2. The FDIC's claims arose from the sale of four loans to AmTrust in 2007 by LendUS's alleged predecessor-in-interest, NL, Inc. *Id.* The FDIC alleged that NL breached a Purchase Agreement when it provided incomplete or false information regarding those loans to AmTrust; the loans later defaulted. *Id.* ¶¶ 2, 12-47. The FDIC is AmTrust's receiver. *Id.* ¶ 2. NL has since dissolved. *See* Docket No. 88 ¶ 8. LendUS allegedly succeeded NL. Docket No. 1 ¶ 6. The FDIC sued LendUS as NL's successor-in-interest, though LendUS denied being the successor. Docket No. 88 ¶ 6. Ultimately, the FDIC accepted LendUS's Rule 68 offer to compromise in the amount of $200,001 on November 21, 2016 without admitting any liability, wrongdoing, or that the FDIC is entitled to or has suffered any damages. Docket No. 55.

With respect to one of the loans (the "Coates Loan"), LendUS filed a Third Party Complaint on October 7, 2016 against Jaclyn Coffin and Elizabeth Coates, asserting a claim for equitable indemnity and contribution arising out of its settlement payment to the FDIC. *See* Docket No. 42 ¶ 4. According to LendUS, the FDIC had alleged in the underlying action that (1) Ms. Coates's employment and income details falsely claimed that she worked for Robert G. Coffin Masonry when she did not, and (2) Ms. Coates was a straw buyer who never intended to occupy the property, and that Ms. Coffin in fact occupied it. *Id.* ¶ 9. Other than the allegation that Ms. Coffin lived in the property, the only other allegation in LendUS's complaint concerning Ms. Coffin was that she was the real estate agent on a short sale of the property for $200,000 after Ms. Coates defaulted on the loan, and that Ms. Coffin's real estate license was later suspended for unstated reasons. *Id.* ¶ 10.

LendUS and Ms. Coates ultimately settled on October 23, 2017 through the bankruptcy court for payment by Ms. Coates of $10,000 to LendUS. *See* Mot. at 4. However, Ms. Coffin never responded to the summons or complaint filed by LendUS. Accordingly, default was entered against her on December 15, 2016. *See* Docket No. 61. LendUS moved for entry of default judgment against Ms. Coffin on January 25, 2018, seeking to recover $170,000 of its $200,001 settlement with the FDIC, in addition to attorney's fees amounting to $81,184.45, which it says is attributable to the Coates Loan. Docket No. 81.

2

On March 15, 2018, the Court denied LendUS's motion for default judgment with leave to amend, finding that LendUS's complaint failed to state a claim for indemnity or contribution, and therefore that its claim against Ms. Coffin lacked merit under *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Docket No. 85. The Court determined that an indemnity theory was inapplicable because LendUS did not sufficiently allege that Ms. Coffin defrauded the FDIC, or that LendUS was jointly and severally liable to the FDIC as a joint tortfeasor. *Id.* The Court also concluded that there was no right of contribution because there was no judgment in favor of the FDIC against Ms. Coffin. *Id.* On April 16, 2018 LendUS filed a First Amended Third-Party Complaint which, in addition to modifying allegations underlying its indemnity and contribution claims, asserted a direct cause of action against Ms. Coffin based on fraud. Docket No. 88. On June 21, 2018, the clerk entered default against Ms. Coffin. Docket No. 96.

## II. LEGAL STANDARD

After entry of default, a court may grant a default judgment on the merits of the case. Fed. R. Civ. P. 55. The Court's "decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980). Courts consider the following factors in determining whether to exercise this discretion:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72. Upon entry of default, the factual allegations of the complaint regarding liability are deemed to have been admitted by the defaulting party. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). However, allegations regarding damages are not deemed admitted. *Id.* Moreover, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). If liability is found, the Court has "considerable leeway as to what it may require as a prerequisite to the entry of a default judgment" when determining damages. *TeleVideo*, 826 F.2d at 917.

3

**III. DISCUSSION**

As the Court noted in its previous Order, LendUS effected adequate substituted service to Ms. Coffin in accordance with California Code of Civil Procedure § 415.20, and several *Eitel* factors weigh in favor of judgment (*e.g.*, prejudice to LendUS, no indication that default was due to Ms. Coffin's excusable neglect, and the unlikelihood of resolution on the merits). Docket No. 85. However, the allegations in the complaint did not support recovery under either an indemnity or a contribution theory. *Id.* LendUS now asserts two new theories of recovery. First, it argues that it is "entitled to an award based on direct liability for fraud" because "Coffin made false representations [to NL] upon which the FDIC and RPM relied to their detriment." Mot. at 7. Second, LendUS contends that it can recover from Ms. Coffin under the "tort of another" doctrine. *Id.* The Court concludes that while LendUS can only recover its attorneys' fees under the tort of another doctrine, it can recover the full amount it seeks from Ms. Coffin via its direct fraud claim.

A. Fraud Based on Third Party Reliance

To state a claim for fraud, a plaintiff must allege (a) misrepresentation; (b) knowledge of falsity; (c) intent to defraud, *i.e.*, to induce reliance; (d) justifiable reliance; and (e) resulting damage. *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974 (1997). Generally, "a fraud action cannot be maintained based on a third party's reliance." *City and Cnty. of San Francisco v. Philip Morris, Inc.*, 957 F. Supp. 1130, 1142 (N.D. Cal. 1997). However, third party reliance upon fraudulent misrepresentations may support a fraud action if the defrauding party intended or had "reason to expect" its fraud would be transmitted to and relied upon by the third party. *Geernaert v. Mitchell*, 31 Cal. App. 4th 601, 605–06 (Ct. App. 1995). Whether a defrauding party can be deemed to have "reason to expect" that its misrepresentations would be transmitted to subsequent purchasers "depends upon (1) the extent of the seller's knowledge of resale to a particular person or class of persons, and (2) the likelihood the particular misrepresentation or concealment would be passed on to them." *Id.* at 608.

Courts have applied the "reason to expect" standard to impose liability where, as here, there is no privity between the defrauding party and the third party that relied upon the misrepresentations. For example, in *Shapiro v. Sutherland*, 64 Cal. App. 4th 1534 (Ct. App.

1998), property owners who failed to disclose neighborhood noise problems while selling their property to a relocation management service were found liable to a subsequent purchaser because the owners knew or should have known that the relocation service intended to sell on the property. Thus, the owners had "reason to expect" that their misrepresentations would be transmitted to a subsequent purchaser. *Id.* at 1550. Similarly, in *Barnhouse v. City of Pinole*, 133 Cal. App. 3d 171 (Ct. App. 1982), a developer who failed to disclose soil and drainage problems when selling a house was found liable to a subsequent buyer for fraud, because the developer had "reason to expect" that there could be subsequent purchasers and that the initial buyer would repeat fraudulent representations about the property to the subsequent purchasers. *Id.* at 193.

Here, the underlying loan application signed by Ms. Coffin put her on constructive notice that any misrepresentation she made to NL in the application may be relied upon by a third party and lead to liability:

> Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of the information contained in this application *may result in civil liability . . . to any person who may suffer any loss due to reliance upon any misrepresentation that I have made in this application . . . .*

Docket No. 88, Exhibit B (emphasis added). Although this provision does not explicitly state that the loan would be transferred, courts have recognized that mortgage loans like the Coates loan are commonly sold by the original lender. *See, e.g.*, *Nat'l Enterprises, Inc. v. Woods*, 94 Cal. App. 4th 1217, 1236 (Ct. App. 2001) (describing the importance of the secondary market for mortgage loans and explaining that "[t]he primary market in mortgages . . . relies heavily on the existence of a secondary mortgage market where the originating lenders can sell the credit instruments they have created") (citation and internal quotation marks omitted); *Anchor Sav. Bank, FSB v. United States*, 81 Fed. Cl. 1, 18 (2008) (noting "the explosive growth of the secondary mortgage market and its ever increasing role in providing liquidity to residential mortgage lenders"); *see also* Cal. Comm. Int. Dev. L. & Prac. § 18:15 (2018 ed.) ("Loans made for the buyers of residences originated by lenders are often sold by those lenders to entities that purchase[] these loans."). The

reality of this practice is reflected in the loan provision quoted above.

It is therefore fair to infer that Ms. Coffin had reason to expect her fraudulent misrepresentations would be transmitted to and relied upon by a third party such as LendUS. *See Trindade v. Reach Media Grp., LLC*, No. 5:12-CV-04759-PSG, 2014 WL 3572132, at *3 n.32 (N.D. Cal. July 18, 2014) ("The party in whose favor a default has been entered is entitled to the benefit of all reasonable inferences from the evidence tendered.") (quoting *In re Consol. Pretrial Proceedings in Air W. Secs. Litig.*, 436 F. Supp. 1281, 1286 (N.D. Cal. 1977)); *cf. Kashmiri v. Regents of Univ. of California*, 156 Cal. App. 4th 809, 832 (2007) (holding that the "reasonableness of [a party's] expectation is measured by the definiteness, specificity, or explicit nature of the [contractual provision] at issue").

Thus, under *Eitel*, LendUS has sufficiently alleged and established the merits of a direct fraud claim against Ms. Coffin to support entry of a default judgment against Ms. Coffin.

B. <u>Tort of Another Doctrine</u>

Under the tort of another doctrine, "[a] person who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred." *Elec. Elec. Control, Inc. v. Los Angeles Unified Sch. Dist.*, 126 Cal. App. 4th 601, 616 (Ct. App. 2005) (citing *Prentice v. N. Am. Title Guar. Corp., Alameda Div.*, 59 Cal. 2d 618, 620 (1963)). LendUS initially sought to recover only the "attorney's fees it was required to incur in defending the [FDIC] action as a result of Coffin's multiple torts" under this doctrine. Mot. at 7. But in a supplemental filing, LendUS argued that it could also recover the settlement amount it paid to the FDIC, because "both the language of [*Prentice*] and common sense dictate that the doctrine is not limited to attorney fees and costs." Docket No. 102 at 3.

LendUS fairly points out that the language of *Prentice*, the seminal case on the tort of another doctrine, suggests "other expenditures" beyond attorneys' fees may be recoverable. But the "cases cited in support of the [doctrine] in *Prentice* are ones in which fees are of the essence of the loss sustained: fees for defense of an action maliciously prosecuted; fees for securing release

6

from a false arrest; fees for clearing a slandered title; fees for obtaining dissolution of a wrongful injunction." *Isthmian Lines, Inc. v. Schirmer Stevedoring Co.*, 255 Cal. App. 2d 607, 612 (Ct. App. 1967) (citations omitted). As LendUS concedes, no court appears to have construed the doctrine to apply to amounts paid in settlement or compromise are recoverable as damages under the tort of another doctrine. *See* Docket No. 102 at 3 ("[T]here does not appear to be a published decision squarely deciding the issue of whether amounts paid in settlement or compromise are recoverable as damages under the doctrine.").

The historical context of the tort of another doctrine lends credence to the notion that it was not intended to cover settlement payments. The doctrine was created as an exception to the "American Rule," whereby each party involved in litigation is generally deemed responsible for paying its own attorneys' fees and costs. *See Prentice*, 59 Cal. 2d at 621; Barry Jablon, *Recovery of Attorney Fees from Third Party Tortfeasors*, 66 Calif. L. Rev. 94, 94–97 (1978) ("Jablon"). One consideration that motivated the creation of the doctrine was that "imposition of fees may . . . be the only punishment available against [third-party] tortfeasors in those situations where plaintiffs lack claims for compensatory or punitive damages." Jablon at 96–97. Commentators have noted that while the language in *Prentice* extends beyond attorney's fees to "other expenditures," the "breadth of *Prentice*'s language is matched by the brevity of its analysis, making it difficult to determine the intended scope of the [doctrine]." *Id.* at 98. Thus, some have concluded that "[i]n view of the authorities cited and the summary nature of the opinion, it is probable that *Prentice* merely intended to create a limited exception to the American rule by allowing fee awards in quiet title actions." *Id.*

Because LendUS can obtain a judgment for the full amount it seeks from Ms. Coffin under a fraud theory, and in light of the lack of precedent for awarding settlement recoveries under the tort of another doctrine, the Court declines to base Ms. Coffin's liability to LendUS for damages on the tort of another theory.

///

///

///

## IV. CONCLUSION

For the foregoing reasons, LendUS's second motion for default judgment is **GRANTED**.

The Clerk of the Court is instructed to enter a final judgment in accordance with the above and close the file in this case.

This order disposes of Docket No. 98.

**IT IS SO ORDERED**.

Dated: November 29, 2018

_____
EDWARD M. CHEN
United States District Judge